## THE MAJESTIC.[1]

### THE NANNIE LAMBERTON.

### NELSON *v.* THE MAJESTIC and THE NANNIE LAMBERTON.

*(District Court, S. D. New York. January 9, 1891.)*

1. **COLLISION—NEGLIGENCE—DAMAGE FROM STEAMER'S SWELLS.**
   A steamer which passes other boats at high speed, so near as to damage them by her displacement waves, is liable for such damage. See *The Monmouth, ante,* 809.

2. **SAME—TOWAGE—DUTY OF TOW ON APPROACH OF STEAMER.**
   Where the pilot of a tug in charge of a tow sees a large vessel rapidly approaching, and knows her displacement waves are dangerous, it is his duty to turn the tow so as to take the waves end on, and, failing to do so, the tug will also be held in fault.

In Admiralty. Suit for damage to libelant's boat, occasioned by displacement swells of the steam-ship Majestic.

*Hyland & Zabriskie,* for libelant.

*Lord, Day & Lord,* for the Majestic.

*McCarthy & Berrier,* for the Nannie Lamberton.

BROWN, J. On June 4, 1890, as the steam-ship Majestic was coming in from sea, her displacement waves struck the tug Nannie Lamberton, which was towing two canal-boats from the Erie basin to Hoboken; one boat being lashed on each side of her. In the high swell, and in the surging of the boats, the tug fell so heavily upon the side of the plaintiff's boat, which was on her starboard side, as to break several of her streaks of pine and oak, for which damage the above libel was filed.

This case, in its general aspects, is quite similar to that of *The Monmouth,* tried shortly after this; and I need not repeat here what has been said in the decision of that cause. *Ante,* 809. In some particulars this case differs from that of *The Monmouth.* The Majestic was go-

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

ing, as her officers say, certainly not over 12 knots an hour, and probably not over 7. The pilot of the Lamberton estimates her speed at 13 knots, and her distance in passing at from 700 to 800 feet. The accident occurred a little to the northward of the bell buoy, below Governor's island; the tug and tow having been previously headed for Hoboken. But the Majestic is a much larger ship than the Monmouth, being one of the largest and swiftest of the ocean steamers, 582 feet long by 57 beam and 22 feet draft. Her waves at the same speed would naturally be larger. The Majestic's witnesses, however, are under the same disadvantage as the Monmouth's, in not having noticed the tug and tow. This was not a fleet of canal-boats, as in the other case; and possibly it did not attract attention, because not supposed to be probably in danger. I am obliged to accept in the main the testimony of the tow's witnesses as to the approximate distance of the Majestic in passing, rather than the mere inference of the steamer's witnesses, based upon the fact that the tow was not noticed, or that her usual course would take her further away. The claim that the steamer went within a length of the Statue of Liberty I regard as entirely mistaken. According to the chart, the line of 23½ feet of water is 1,250 feet to the eastward of Liberty island. The great height of the Statue of Liberty makes more deceptive than usual any mere estimate of distance on water reckoned from that object. The course stated, viz., "a straight course for pier 5 or 6" after getting up to Robbins reef, would carry the steamer a half mile from the Statue of Liberty; and if, as is probable, she rounded towards the eastward soon after passing buoy 18, and went not far to the westward of it, thence steering straight for pier 6, that course would carry her three-fourths of a mile east of the Statue of Liberty, and about where the libelant's witnesses say she was, and nearly on the same course as the Monmouth. The same observations as to the general care and skill of the officers, or of the pilot in charge, in avoiding similar accidents, are pertinent here as in the case of The Monmouth; and, on examination of the whole testimony, I am obliged to come to a similar conclusion as in that case, viz., that for some reason their usual vigilance and care were in this instance relaxed, or that the usual slowing of the vessel was from some cause delayed. I cannot doubt the testimony of the boatmen as to the strong surging that the waves caused to the tow, or that the accident occurred in the way detailed by them; and as the weight of evidence shows that the steamer passed probably faster than customary, and at all events much nearer than was usual, or was in any way necessary for the steamer, I must hold the Majestic liable. The Morrisania, 13 Blatchf. 512; The Drew, 22 Fed. Rep. 852, (affirmed on appeal;) The Atalanta, 34 Fed. Rep. 918.

But no good reason appears why the tug should not have turned the tow's stern directly to the wave. The Majestic was seen some time before she reached the tow. She was apparently coming quite near to the tug and tow, and, as the pilot said, would "likely give them a good shaking up." The coming wave was also seen some little time before it struck. The pilot knew its threatening character, and had time to

turn stern to it. He slowed his engines, and, as he says, did turn some to starboard. Other witnesses contradict him in this regard. But it is clear from the testimony that the tug was not much turned to starboard; that the wave was not taken astern, as it might have been, though the danger was seen; and for this reason I must hold the tug to blame also.

Decree against both defendants, with costs.